**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON**

**CIVIL ACTION NO. 11-46-DLB**

**DANIEL R. PADGETT**                                                                      **PLAINTIFF**

vs.                      **MEMORANDUM OPINION & ORDER**

**MICHAEL J. ASTRUE, Commissioner
SOCIAL SECURITY ADMINISTRATION**                            **DEFENDANT**

\* \* \* \* \* \* \* \* \* \*

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record and the parties' dispositive motions, will affirm the Commissioner's decision, as it is supported by substantial evidence.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Daniel Padgett filed an application for a period of disability and disability insurance benefits (DIB) on June 30, 2008. (Tr. 114-18). At the time of filing, Plaintiff was 33 years old and alleged a disability onset date of June 3, 2008. (Tr. 114). Plaintiff alleges he is unable to work due to discogenic disc disease and lower back pain. (Tr. 134, 175). Plaintiff has a high school education and past relevant work as a farmer, area manager of a feed company, delivery driver, correctional officer, sewing machine operator, and general laborer. (Tr. 32-36, 57-58, 135, 140,142-50, 190). He stopped working on June 3, 2008. (Tr. 134).

1

Plaintiff's claim was denied initially and again on reconsideration. (Tr. 87, 88). At Plaintiff's request, an administrative hearing was conducted on October 22, 2009 before Administrative Law Judge (ALJ) Don C. Paris. (Tr. 15-24). On October 29, 2009, ALJ Paris ruled that Plaintiff was not disabled and therefore not entitled to disability insurance benefits. (Tr. 15-24). This decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on December 28, 2010. (Tr. 1-5).

The present action was filed on June 29, 2011. (Doc. # 1). The matter has culminated in cross-motions for summary judgment, which are now ripe for adjudication. (Docs. # 11, 14).

## II. DISCUSSION

### A. Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, the Court is to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if the Court might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Moreover, even if there is evidence favoring Plaintiff's side, the Commissioner's findings must be affirmed if supported by

2

substantial evidence. *Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988). Similarly, an administrative decision is not subject to reversal merely because substantial evidence would have supported the opposite conclusion. *Smith v. Chater*, 99 F.3d 780, 781 (6th Cir. 1996).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments, alone or in combination, are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform her past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### B. The ALJ's Determination

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 3, 2008, the alleged onset date. (Tr. 17). At Step 2, the ALJ found that Plaintiff had the following severe impairments: morbid obesity, multilevel degenerative disc disease, and degenerative joint disease of the lumbar spine with chronic back pain. (Tr. 17). The ALJ also found that Plaintiff had the following nonsevere impairments: hypertension, obstructive sleep apnea, migraine headaches and bilateral carpal tunnel syndrome. (Tr. 17).

At Step 3, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 19). Specifically, the ALJ evaluated Plaintiff's spinal impairments under Listing 1.04 (Disorders of the Spine) and concluded that Plaintiff's condition did not meet or equal the necessary criteria under the listing. (Tr. 19).

At Step 4, the ALJ determined that Plaintiff retains the residual functional capacity (RFC) to perform a restricted range of light work as defined in 20 C.F.R. § 404.1567(b). (Tr. 20). The ALJ found that Plaintiff can stand for two hours during an eight hour workday, continuously for up to two hours at a time; walk for two hours during an eight hour workday, continuously for up to two hours at a time; and sit for four hours during an eight hour workday, continuously for up to one hour at a time. (Tr. 20). The ALJ also specified that the Plaintiff may only occasionally climb stairs/ramps, stoop, kneel or crouch and should refrain from crawling or climbing ladders/ropes/scaffolds. (Tr. 20). Furthermore, the ALJ established that Plaintiff should only frequently push/pull with his lower extremities. (Tr. 20). The ALJ found that Plaintiff is limited to no more than occasionally lifting or carrying twenty pounds, but is frequently able to lift or carry ten pounds. (Tr. 20). Additionally, the ALJ stated that Plaintiff should avoid concentrated exposure to vibration and work involving hazards such as dangerous machinery and unprotected heights. (Tr. 20). Based upon this RFC, the ALJ concluded that Plaintiff was unable to perform his past relevant work as an area manager of a feed company, corrections officer, delivery driver and sewing machine operator. (Tr. 22).

Accordingly, the ALJ proceeded to the final step of the sequential evaluation. At Step 5, the ALJ found that Plaintiff was born on July 31, 1974 and was 33 years old, which is defined as a younger individual, on the alleged disability onset date. (Tr. 22). *See* 20 C.F.R. § 404.1563. The ALJ also found that Plaintiff has at least a high school education and is able to communicate in English. (Tr. 22). The ALJ stated that Plaintiff's transferable job skills were not material to the determination of disability. (Tr. 22). Considering Plaintiff's age, education, work experience, and residual functional capacity, the ALJ determined that a significant number of jobs exist in the national economy that Plaintiff can perform. (Tr. 22). ALJ Paris therefore concluded that Plaintiff has not been under a disability within the meaning of the Social Security Act since Plaintiff's alleged onset disability date of June 3, 2008 through the date of the decision. (Tr. 24).

**C.     Analysis**

Plaintiff advances two arguments on appeal. First, Plaintiff alleges that the ALJ improperly rejected the opinions of both treating neurosurgeons, Drs. O. Amr El-Naggar and Phillip Tibbs. Furthermore, Plaintiff contends the ALJ failed to provide an adequate rationale for doing so, as required by the agency's procedural requirements. Second, Plaintiff argues that the ALJ erroneously evaluated Plaintiff's testimony concerning his pain and limitations, resulting in unsubstantiated findings regarding his ability to perform work. Each of these arguments will be addressed in turn.

**1.     The ALJ Properly Rejected the Opinions of Drs. El-Naggar and Tibbs**

Plaintiff contends that ALJ Paris improperly rejected the opinions of Drs. El-Naggar

and Tibbs regarding limitations imposed by Plaintiff's back pain.[1]  Moreover, Plaintiff asserts that the ALJ failed to cite good reasons, supported by substantial evidence, for rejecting the opinions of Drs. El-Naggar and Tibbs.  Plaintiff's argument is unpersuasive.

**I.     Dr. El-Naggar**

Plaintiff contends that the ALJ erred in rejecting the opinion of treating physician, Dr. El-Naggar.  (Tr. 270-73, 303-06).  "Generally, the opinions of treating physicians are given substantial, if not controlling, deference."  *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)).  However, treating physicians' opinions are only given such deference when supported by objective medical evidence and consistent with other substantial evidence in the record.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); C.F.R. § 404.1527(d)(2).  If the ALJ concludes that either criterion is not satisfied, he applies the following factors in determining how much weight to give a treating physician's opinion: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source . . ."  *Wilson*, 378 F.3d at 544.  "'The determination of disability is [ultimately] the prerogative of the [Commissioner], not the treating physician.'"  *Warner*, 375 F.3d at 390 (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)).  Accordingly, an ALJ may elect not to give controlling weight to a treating physician's

---

[1] While Plaintiff refers to both Drs. El-Naggar and Tibbs as "treating neurosurgeons," Dr. Tibbs was actually a one-time neurosurgical examiner.  The record reveals that Plaintiff was only examined by Dr. Tibbs for a neurosurgical consultation on July 22, 2008. (Tr. 289).  This is further documented in the RFC Questionnaire filled out by Dr. Tibbs.  (Tr. 338).  Therefore, the Court will not consider this assertion.

6

opinion, as long as he provides "good reasons" for so doing. *Wilson*, 378 F.3d at 544; 20 C.F.R. §§ 404.1527(d)(2).

In this case, the ALJ rejected the opinion of Dr. El-Naggar that Plaintiff is "totally and permanently disabled." (Tr. 271, 303, 305). Dr. El-Naggar first examined Plaintiff on June 21, 2008. Thereafter, he issued a progress note stating that he does "not believe the patient can be gainfully employed" and "should be considered totally and permanently disabled," since even sedentary work would cause Plaintiff substantial back pain. (Tr. 271). Subsequently, Dr. El-Naggar saw the Plaintiff for follow-up visits on September 5, 2008 and December 6, 2008. (Tr. 303, 305). During the September follow up, Dr. El-Naggar noted that while Plaintiff stopped taking Celebrex regularly, was walking up to two miles a day, and had "improved somewhat since his last visit," he was still ineligible for employment and "should be considered totally and permanently disabled." (Tr. 303). Similarly, after the December follow up, Dr. El-Naggar reiterated that Plaintiff "should be considered totally and permanently disabled." (Tr. 305).

Contrary to Plaintiff's assertion, the ALJ did not commit reversible error when he rejected Dr. El-Naggar's reports stating that Plaintiff was "totally and permanently disabled." (Tr. 22). A treating physician's opinion is only entitled to deference when it is a *medical opinion*. *See* 20 C.F.R. § 404.1527(d). When a treating physician instead submits an opinion on an issue reserved to the Commissioner–such as whether the claimant is "disabled" or "unable to work"–the opinion is not entitled to any particular weight. 20 C.F.R. § 404.1527(e); Social Security Regulation 96-5p ("Medical sources often offer opinions about whether an individual . . . is 'disabled' or 'unable to work.' Such opinions on these issues must not be disregarded. However, even when offered by a treating source, they

7

can never be entitled to controlling weight or given special significance."). Because Dr. El-Naggar's progress notes indicated Plaintiff was "totally and permanently disabled," it was properly discounted by the ALJ as an opinion on an issue reserved to the Commissioner.[2] *See Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 493 (6th Cir. 2010).

Moreover, the ALJ determined that Dr. El-Naggar's determination of disability was inconsistent with his own treating notes. (Tr. 18, 303). As discussed earlier, in the September 2008 assessment, Dr. El-Naggar indicated that while Plaintiff was still having back pain, he had "somewhat improved" and his leg pain was also improving. Dr. El-Naggar reported that Plaintiff was walking up to two miles a day and had stopped taking Celebrex regularly; however, Dr. El-Naggar still concluded that Plaintiff was to be considered "totally and permanently disabled." (Tr. 303-04). Additionally, although Dr. El-Naggar saw Plaintiff on three separate occasions, he only examined Plaintiff at the initial visit. Plaintiff's examination revealed normal motor strength and sensory functions in the upper and lower extremities, his gait and station were within normal limits, and he exhibited no facet tenderness in his spine.

Furthermore, the ALJ found that Dr. El-Naggar's opinion contradicted the weight of the medical evidence of record. (Tr. 22). While the objective medical evidence clearly establishes that Plaintiff has multilevel degenerative disc disease and degenerative joint

---

[2] Although the ALJ properly discounted Dr. El-Naggar's opinion that Plaintiff was totally and permanently disabled as an opinion on an issue reserved to the Commissioner, it is important to note that Dr. El-Naggar's opinion was also contradictory to the opinion of Dr. Tibbs. (Tr. 290). In his report dated July 22, 2008, Dr. Tibbs opined that Plaintiff would likely not be able to resume his prior job as a delivery driver or manual labor. (Tr. 290). However, Dr. Tibbs did not rule out Plaintiff's ability to perform all jobs. In fact, Dr. Tibbs suggested that Plaintiff be recommended to Vocational Rehabilitation. (Tr. 290).

disease of the lumbar spine with chronic back pain, it fails to support Dr. El-Naggar's opinion that Plaintiff is totally and permanently disabled. An MRI of Plaintiff's lumbar spine in June 2008 showed multilevel degenerative disc disease and degenerative joint disease, resulting in only mild to moderate stenosis. (Tr. 263-64). An X-ray done that same month revealed mild spondylolisthesis (grade 1) at L5 on S1 secondary to congenital spondylolyses and degenerative changes in the lower lumbar spine. (Tr. 263). In June 2008, Plaintiff saw Dr. Mohammed Barbar Iqbal, a pain management specialist. (Tr. 276-77). Upon examination, Plaintiff displayed good range of motion in his lumbar spine. (Tr. 277). Plaintiff reported that he never tried physical therapy nor received treatment from a pain clinic. Thereafter, Plaintiff received two epidural steroid injections which provided some relief. (Tr. 278-79, 300-01, 303). In July 2008, Plaintiff was seen for a consultative examination by neurosurgeon, Dr. Tibbs. During the examination, straight leg raising was negative, manual muscle testing was 5/5, and the musculoskeletal exam was noted as unremarkable. (Tr. 289). By April 2009, although Plaintiff still reported back pain, he was not taking any medications. (Tr. 327). At the hearing on October 22, 2009, Plaintiff reported taking Lortab for pain which provided some relief, but denied receiving any other type of medical treatment for his back pain. (Tr. 38).

Finally, the ALJ found Plaintiff's own testimony was inconsistent with Dr. El-Naggar's opinion. (Tr. 22). The Plaintiff claimed to be in severe and constant pain, yet still participated in many daily activities. Plaintiff's Function Report dated July 8, 2008, revealed that despite his allegations of severe pain, he is able drive and ride in a car, go to church on Sundays, and visit with family twice a month. (Tr. 155-56). Plaintiff also noted that although he is not able to do all the tasks he used to, he is still able to help

9

around the house by taking care of his children and pets, grocery shop, prepare simple meals, and perform some household chores, such as laundry and cutting the lawn with a riding mower for short periods at a time. (Tr. 153-55). Plaintiff also stated that he is able to walk about 1/4 mile and lift up to twenty pounds. (Tr. 157). During the October 22, 2009 hearing, Plaintiff stated that while certain accommodations need to be made, he is able to attend classes twice a week at Somerset Community College. Moreover, he drives to the grocery store, doctor appointments, and one day a week to class, where he must drive 24 miles each way. (Tr. 30-31).

Accordingly, the Court finds that ALJ Paris stated good reasons for rejecting the opinion of Dr. El-Naggar, and substantial evidence supports the ALJ's determination to afford no weight to Dr. El-Naggar's finding that Plaintiff is totally and permanently disabled.

### ii. Dr. Tibbs

Plaintiff also contends that the ALJ improperly rejected the opinion of Dr. Tibbs. As stated above, since Dr. Tibbs only examined Plaintiff on one occasion, he cannot be considered a treating physician. *See Atterberry v. Sec'y Health & Human Servs.*, 871 F.2d 567, 572 (6th Cir. 1989) (physician who examined claimant only once was not a treating physician). Unlike treating source opinions, consultative examiners' opinions are not entitled to any "special degree of deference." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). Because Dr. Tibbs was a one-time examiner, the ALJ properly decided that his opinion was not entitled to special deference or weight.

Dr. Tibbs opined that Plaintiff "will not be able to return to his former job or manual labor." (Tr. 290). Dr. Tibbs also recommended a referral to Vocational Rehabilitation. (Tr. 290). As stated above, when a physician submits an opinion on an issue reserved to the

10

Commissioner–such as whether the claimant is "disabled" or "unable to work"–the opinion is not entitled to any particular weight. 20 C.F.R. § 404.1527(e); SSR 96-5p. Moreover, while ALJ Paris afforded Dr. Tibbs' opinion little weight, he actually agreed with Dr. Tibbs' conclusion and found that Plaintiff was unable to perform his past relevant work as an area manager of a feed company, corrections officer, delivery driver and sewing machine operator. (Tr. 22). Consequently, the ALJ did not improperly reject the opinion of one-time consultative examiner, Dr. Tibbs.

### 2. The ALJ Properly Assessed the Credibility of Plaintiff's Testimony Relative to the Pain, Persistence, and Limiting Effects of His Symptoms

Plaintiff argues that while ALJ Paris summarized the Plaintiff's testimony regarding the activities he was able to perform, he erred in failing to consider the limitations Plaintiff experiences while performing those activities. Plaintiff alleges this resulted in unsubstantiated findings regarding his ability to perform work. Plaintiff's argument is without merit.

Credibility determinations are generally reserved for the ALJ and should not be discarded lightly. *Jones*, 336 F.3d at 476. Meaningful review, however, requires more than "blanket assertions that the claimant is not believable." *Rogers v. Comm'r Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007). Social Security Rule 96-7p requires the ALJ to explain his credibility determination so that it is "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id*. The Court's review, then, is limited to determining whether the ALJ's explanations for discrediting the Plaintiff's testimony are reasonable and supported by substantial evidence in the record. ALJ Paris concluded that while Plaintiff's

medically determinable impairments could reasonably be expected to produce the alleged symptoms, his "statements concerning the intensity, persistence and limiting effects" of his symptoms were "not credible." (Tr. 21).

Despite complaints of both chronic and constant back pain, Plaintiff's testimony proved to be inconsistent with these allegations. Plaintiff testified he is no longer seeing a pain management doctor and further stated that his pain medication provides some relief from his symptoms. (Tr. 38). Additionally, the ALJ noted that Plaintiff's reported daily activities are inconsistent with his complaints of disabling pain. (Tr. 21). *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) (An ALJ may consider a Plaintiff's daily and social activities when evaluating her credibility.). Plaintiff testified that he suffers constant disabling pain and is not comfortable in any position. (Tr. 40, 169). However, during the hearing, Plaintiff testified that he was able to attend classes at community college twice a week, complete his homework, drive occasionally, take care of his personal hygiene, assist with his daughter's homework, play board games and video games with his daughter, perform some household chores, and occasionally shop. (Tr. 32, 45-48). The ALJ also considered Plaintiff's Functional Report, wherein Plaintiff indicated he was able to go to the library, help care for his two children and pets, perform some household chores, prepare simple meals a few days per week, occasionally shop, attend church, and visit with family members. (Tr. 153-56).

Plaintiff now argues that he is unable to perform many of these activities. (Tr. 21; Doc # 11-1). For the first time at the hearing, Plaintiff alleged that he could only lift ten or fifteen pounds and was unable to pick up his daughter from her playpen. (Tr. 42). However, Drs. Ellis, Skipper, and Tibbs all noted in their RFC Questionnaires that Plaintiff

12

was able to occasionally lift twenty pounds. (Tr. 312, 317, 342). Moreover, in his Function Report, Plaintiff stated that he could lift twenty pounds or less. (Tr. 157). Plaintiff also contends that he never told the ALJ he was able to care for family pets and even included an affidavit stating such to the Appeals Council. (Doc. # 11-1, Tr. 205). As addressed above, Plaintiff did in fact report that he was able to "feed and water dog and two cats" in his Function Report. (Tr. 153). Contrary to Plaintiff's assertions, ALJ Paris stated sufficient reasons for his credibility findings, which were reasonable and supported by substantial evidence. For these reasons, the Court declines to disturb the ALJ's credibility findings on appeal.

### III. CONCLUSION

Therefore, for the reasons stated herein, the Court concludes that the ALJ's RFC determination and his finding that Plaintiff was not disabled for purposes of the Social Security Act is supported by substantial evidence. Although the record contains differing opinions as to the extent of Plaintiff's limitations and difficulties with daily activities, the Court finds that the ALJ properly performed his duty as trier of fact in resolving the conflicts in evidence. *See Richardson v. Perales*, 402 U.S. 389, 399 (1971). Accordingly, for the reasons stated,

**IT IS ORDERED** as follows:

1. The decision of the Commissioner is supported by substantial evidence and is hereby **AFFIRMED**;

2. Plaintiff's Motion for Summary Judgment (Doc. # 11) is hereby **DENIED**;

3. Defendant's Motion for Summary Judgment (Doc. # 14) is hereby **GRANTED**; and

4. A Judgment affirming this matter will be entered contemporaneously herewith.

This 29th day of November, 2011.



Signed By:
*David L. Bunning*
**United States District Judge**

G:\DATA\SocialSecurity\MOOs\Lexington\5-11-146 Padgett MOO.wpd